GLADNEY, Judge.
Glen E. Mullin instituted this action, one of two suits brought against Arley Skains, Individually and as Administrator of the Estate of his Minor daughter, Judy Skains, and State of Louisiana, Through the Department of Highways, to recover damages occasioned by an automobile collision. Alleging that Arley Skains was an uninsured motorist, the Southern Farm Mutual Insurance Company, the public liability insurer of Mullin, was named a defendant.
Alfred A. Barnard brought a companion suit which has been consolidated with the instant case for the purposes of trial. Personal injuries were sustained by Glen E. Mullin and Alfred A. Barnard when the Dodge sedan driven by Judy Skains collided with the truck driven by Glen E. Mullin. The cause of action by Glen E. Mullin is based on the joint negligence of Judy Skains and the Department of Highways in that: Judy Skains failed to observe the conditions of the highway and exercise proper control over her vehicle; and Department of Highways permitted mud to wash down from the driveway of its maintenance facility onto the highway thereby creating a dangerous condition which caused the driver of the Skains vehicle to lose control of it; further, that the Department failed to post safeguards for the alleged hazardous condition of the highway. Prior to trial of the case the demands of Mullin against State Farm Mutual Automobile Insurance Company were dismissed with prejudice. Prior to trial Mullin dismissed as of nonsuit his demands against Arley Skains. Because of the condition of her health Judy Skains was unavailable as a witness and the suit brought by Arley Skains was indefinitely continued.
The judgment rendered held the Department of Highways liable for not preventing the mud from drifting onto the highway *209 and it held Judy Skains negligent for failing to exercise proper control of the automobile driven by her. The decree awarded plaintiff $7,006.37, which was one-half of the total amount of $14,012.75, the court ruling plaintiff had released one of the two joint tort-feasors and thereby deprived the other of the right to enforce contribution.
Appellee prays in his answer to the appeal that his'award be increased to $25,000; that the State of Louisiana, Through the Department of Highways, be condemned to pay the total award; and all court costs. Appellant assigns error to the judgment in holding a hazardous muddy condition existed causally related to the accident; in holding the Department of Highways negligent in not taking necessary safety precautions ; in granting excessive awards; and in its assessment of costs.
On the morning of June 25, 1965 at about 7:30 o’clock, Glen E. Mullin was driving a pick-up truck north on the Rus-ton-Farmerville Highway with Alfred A. Barnard occupying the right front seat. A heavy rain the night before, and the drizzle which continued on into the morning hours, had left the shoulders soft and the asphalt surface of the highway wet. When the truck neared the entrance or driveway to a maintenance facility of the Department of Highways situated on the east side of the highway, a car driven by Judy Skains approached at a moderate rate of speed. Approximately 75 feet north of the driveway the right wheels of the automobile ran off the right or west side of the highway. It returned to its proper lane of travel and suddenly veered or skidded into the northbound traffic lane in which Mullin was driving his truck. The truck collided with the right side of the automobile opposite the driveway. The two vehicles came to rest in the northbound traffic lane about 8 feet apart with the truck pointed north and the Skains vehicle aligned east and west across the northbound traffic lane heading east with the front end off of the roadway and the rear end approximately 3 feet from the center line of the highway.
At the scene of the accident the highway facility had been under construction some 200 feet east of the highway. The facility is located on a hill about 9 feet higher than the highway. Between the facility and the highway a driveway had been constructed having a width of approximately 30 feet except where it intersects the pavement at which point it fans out to a width of 100 feet or more. It was constructed of red clay. Narrow ditches on either side of the driveway connect with the ditch on the east side of the highway. The driveway is not graveled or hard surfaced and following a heavy rain water runs down the driveway and onto the highway carrying red clay or dirt which creates a slippery condition on the asphalt surface where it is deposited.
Following the heavy downpour of rain on the night preceding the accident dirt or red clay accumulated on the east side of the highway adjacent to the apron of the driveway. During the morning of the accident it continued to drizzle and muddy water from the driveway ran onto the roadway. State Trooper James E. El-dridge, who arrived at the scene of the accident and investigated it shortly after its occurrence, testified he found muddy water running onto the east lane with mud deposits extending about 2i/¿ feet from the east edge of the blacktop surface. O. O. Osborne, Chief of Police of Ruston, who accidently came upon the accident shortly after it occurred, testified there was quite a lot of mud on the highway where the cars ran together and was coming from the driveway. It was[1] testified by several witnesses that some of the mud observed on the highway after the accident had accumulated from the wheels of vehicles which had turned into the muddy driveway and then backed into the highway.
The trial judge in concluding that the mud was a contributing cause of the accident gave this version of the evidence:
“The overwhelming weight of the testimony was to the effect that mud, which had run down from the driveway, was *210 standing on the highway for some time prior to the accident. This was due to the composition of the clay or dirt used to surface the driveway, the relative elevations of the driveway and the highway, and the action of rainfall. Judge J. R. Dawkins[1] traveled this route several times each month in the course of his duties as District Judge of Union and Lincoln Parishes. He noted that ‘on numerous occasions the fact that the red clay which composed the driveway entrance at times washed out over the driveway entrance at times washed out over the surface of the road on which we were traveling.’ Marilyn Post had also seen this mud .on the highway surface. Mud on the highway on the morning of the accident was described by Miss Post, La Jo Hayes, Perry Jones, Officer Stone and Officer White. This combined testimony supported the assertion of the plaintiff Barnard that red clay or silt had run off the driveway and built up on the west side of the highway. In view of this testimony, it is concluded that mud on the highway surface in the area of the accident created a hazardous road condition after or during a rain, and that this condition was due to the manner in which the Department constructed the driveway.”
Chief Osborne testified he traced tire marks of the automobile driven by Judy Skains from the place where its wheels dropped off the highway onto the shoulder of the road to the point of impact. Manifestly the fact that Judy Skains (who was unable to testify in the case) lost control of her automobile was a contributing factor in the resulting collision. We concur with the finding of the trial judge that the mud on the highway did not cause the car wheels to run off of the highway. Counsel for appellant argues that the loss of control over her car by Judy Skains after it had returned to the highway was caused by slick tires and the wet asphalt surface. The testimony of Chief Osborne that the tires on the Skains car were slick was contradicted by Mr. and Mrs. Skains and in the absence of other evidence on this point we find the proof thereof insufficient.
The trial court held the failure to prevent the mud deposits was negligence which was a proximate cause of the accident as the mud interfered with any attempt of Miss Skains to regain control of her car before it skidded sideways into the northbound traffic lane. We do not find reversible error in the action of the court in holding the accident was caused by the joint negligence of Judy Skains and the Department of Highways.
Appellee is aggrieved by the judgment insofar as it reduces to one-half of the total award his recovery against the Department of Highways. The action of the trial court was predicated upon a motion to dismiss filed by appellee in which he dismissed with prejudice his demands against State Farm Mutual Insurance Company. This insurer was liable for the negligence of Judy Skains under its uninsured motorist clause. The decision of the court was based on Harvey v. Travelers Insurance Company, La.App., 163 So.2d 915 (3rd Cir. 1964). This case involves a suit on behalf of the guest passenger in an automobile being driven by James C. Downs and insured by Lumbermens Mutual Casualty Company which collided with another vehicle driven by an employee of Davidson Sash & Door Company, Inc. Both drivers were alleged to be negligent. After Lumbermens filed its answer and brought a third party action, it and a coinsurer entered into a compromise agreement with plaintiff Harvey. Therein the payee reserved its rights against the other tort-feasor; the payee agreed to dismiss the suit against the payors, to indemnify the payors and hold them harmless from further damages, and to reimburse payors *211 for any other claims as a result of said accident. The plaintiff dismissed the suit as to said payors but when the question was raised the court held the plaintiff had settled with and released one of the two alleged tort-feasors, and though reserving all of his rights against the other, the remaining alleged tort-feasor was deprived of his right to enforce contribution against the one released, and claimant could accordingly recover only one-half of the damages which he sustained from the other.
In the instant case Mullin by written motion dismissed with prejudice his claim against the defendant State Farm Mutual Insurance Company as having been compromised and settled in full. Also by oral motion counsel for plaintiff moved the dismissal of plaintiff’s claim against Arley Skains individually and as administrator of the estate of Judy Skajns. The release and compromise granted by plaintiff to State Farm cannot affect the rights of the Department of Highways to contribution. State Farm was liable by reason of the uninsured motorist coverage written into the policy of its insured, Glen E. Mullin. Under the applicable statutory provisions of LSA-R.S. 22:1406, subd. D(4) where such an insurer pays to the insured, “the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, * * * ” Thus State Farm’s liability rests solely upon its conventional contract with Mullin against whom State Farm is entitled to be indemnified as prescribed in the provisions of the statute. The Department of Highways even in the absence of such an agreement between Mullin and State Farm was without a cause of action against State Farm for contribution. The distinction between the holding in Harvey and the question raised in the instant case is clear. In Harvey the right of the remaining tort-feasor was prejudiced by the compromise and release, whereas herein the Department of Highways lost none of its rights by the agreement between Mullin and State Farm. Skains who was dismissed as of nonsuit may be subjected to liability for contribution. It follows, therefore, that the judgment under review was in error in applying the rule of the Harvey case.
Mullin received painful and serious injuries for which he was treated by Dr. Lamoyne C. Bleich, a surgeon, Dr. Neil S. Kirkland, a dental surgeon, and Dr. Roy H. Ledbetter, Jr., an orthopedic surgeon. As a result of the accident Mullin sustained multiple bruises, abrasions and contusions about his head, face and body, and especially serious injuries to his mouth, jaw, teeth and maxillary bone. Also he sustained a comminuted shattering type of fracture which involved the lower end of the tibia which required operative correction.
Dr. Kirkland testified he examined Mullin on June 25, 1965 at which time he found him unconscious, badly swollen and in considerable pain. The maxillary bone or upper arch of the mouth was crushed. During his treatment he removed two teeth and some fragments of bone and inserted a metal plate which served as a splint for the maxillary bone while it was healing. The patient was unable to chew or eat anything satisfactorily until August 26, 1965 at which time he began to chew satisfactorily, although his bite still bothered him as of the time of trial. Dr. Kirkland testified that the injury affected the contour of Mullin’s face and that during the treatment he suffered a great amount of pain. The shattering type fracture of the tibia required surgery by Drs. Bleich and Led-better, involved the ankle joint surface, and necessitated an operation referred to as open reduction and internal fixation. It was necessary that he remain in the hospital approximately two months and wear a leg cast during that period of time. *212 After discharge from the hospital he used crutches for some time. The trial court made a total award in damages to plaintiff of $14,012.75, which amount included $1,-512.00 as special damages. The award so made by the trial court impresses us as being neither inadequate nor excessive.
The trial court assessed the Department of Highways with “J4 of the costs of court in these proceedings.” The Department of Highways being a state agency falls within the provisions of LSA-R.S. 13:4521 [as amended by Act 509 of 1964] Section 1 of which states:
“Except as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board or commission shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality or other political subdivision, board or commission, in any court of this state or any municipality of this state * * * This section shall have no application to stenographers’ costs for taking testimony.” [LSA-R.S. 13:4521]
The costs in this case against the Department of Highways should have been assessed in accordance with the statute and accordingly will be limited to “the stenographers’ costs for taking testimony.”
For the reasons hereinabove set forth, the judgment is amended and, as so amended, is affirmed and recast to read:
It is, therefore, ordered that there be judgment herein in favor of Glen E. Mullin and against the State of Louisiana, Through the Department of Highways, for the total sum of $14,012.75, with 5% per annum interest from judicial demand until paid, and, subject to the provisions of LSA-R.S. 13:4521, the State of Louisiana, Through the Department of Highways, is cast for the costs of court in these proceedings.

. Judge Dawkins had by official action recused himself and appointed Fred W. Jones to hear and determine all issues in this case.